IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CR. NO. 12-01128-01 JMS |
| | ) | |
| Plaintiff, | ) | ORDER DENYING DEFENDANT |
| | ) | UIKI TEAUPA'S MOTION TO |
| vs. | ) | SUPPRESS, OR IN THE |
| | ) | ALTERNATIVE, MOTION IN |
| UIKI TEAUPA (01), | ) | LIMINE TO EXCLUDE |
| | ) | NOVEMBER 2009 [SIC] |
| Defendant. | ) | INTERVIEW |
| _____ | ) | |

## ORDER DENYING DEFENDANT UIKI TEAUPA'S MOTION TO SUPPRESS, OR IN THE ALTERNATIVE, MOTION IN LIMINE TO EXCLUDE NOVEMBER 2009 [SIC] INTERVIEW

## I. INTRODUCTION

On October 24, 2012, Defendant Uiki Teaupa ("Defendant" or "Teaupa") was indicted for conspiracy to distribute, and possession with intent to distribute, methamphetamine in violation of 21 U.S.C. §§ 846, 841(a), & 841(b)(1)(A).  Trial is to begin on March 12, 2013.  Teaupa moves to suppress, or in limine, to exclude statements he previously made to a Hawaii County police officer at the Kealakehe police station after an October 20, 2009 arrest on an unrelated bench warrant.  Doc. No. 54 ("Motion to Suppress").[1]  The court held an evidentiary hearing on the Motion to Suppress on March 1, 2013.

_____

[1]  The Motion to Suppress refers to a November 2009 interview in its title, but the parties have clarified (and the evidence confirms) that the arrest was on October 20, 2009.

The court has considered the record and filings in this case, the supporting and opposing memoranda, the arguments of counsel, and the credibility of the witnesses testifying at the hearing.  Based on the following, the court finds and concludes that Teaupa was not "in custody" and was not "interrogated" on October 20, 2009 for purposes of *Miranda v. Arizona*, 384 U.S. 436 (1966). Statements that Teaupa made during that arrest are admissible even though he was not given *Miranda* warnings at the time.[2]  Accordingly, the Motion to Suppress is DENIED.

## II.  BACKGROUND

### A.    Teaupa's Public Authority Defense and the Government's Rule 404(b) Notice

Count One of the February 6, 2013 Superceding Indictment charges Teaupa with a violation of 21 U.S.C. § 846 for conspiracy to distribute, and to possess with intent to distribute, 500 grams or more of a mixture and substance containing methamphetamine in violation of 21 U.S.C. §§ 841(a) & 841(b)(1)(A). Doc. No. 40, Superceding Indictment at 1.  The conspiracy allegedly began by February 2009 and continued through on or about February 2012.  *Id.*  Count Two charges that on or about April 19, 2011, Teaupa knowingly and intentionally

---

[2]  The government seeks to admit this evidence under Federal Rule of Evidence 404(b). This Order only addresses whether Defendant's October 20, 2009 statements complied with *Miranda*; it does not address whether the statements are otherwise admissible under Rule 404(b).

possessed with intent to distribute 500 grams or more of a mixture and substance containing methamphetamine, in violation of 21 U.S.C. §§ 841(a) & 841(b)(1)(A).

On December 31, 2012, Teaupa filed a Notice of a Public Authority Defense, indicating he "intends to assert a defense of actual or believed exercise of public authority on behalf of a law enforcement agency or federal intelligence agency at the time of the alleged offense." Fed. R. Crim. P. 12.3. Teaupa contends that "he is legally excused from the alleged crimes because he had a reasonable belief that he was acting as an authorized government agent to engage in [the charged] illegal activities." Doc. No. 86, Def.'s Trial Br. at 2.

On February 11, 2013, the government file a Notice of Intent to Offer Evidence Pursuant to Rule 404(b). Doc. No. 43 ("404(b) Notice"). The 404(b) Notice provides that the government intends to introduce statements that Teaupa made on October 20, 2009 shortly after his arrest on a state court bench warrant. According to the 404(b) Notice, during that October 20, 2009 arrest, Teaupa told Hawaii County police officer Edwin Buyten ("Buyten") that he and a Tongan male named "Simon" had flown to Maui the day before and were in Hawaii to pick up drug currency (that is, proceeds of drug sales). *Id.* at 3. Teaupa revealed to Buyten that "Simon" worked for American Airlines and sends large amounts of methamphetamine to Hawaii. *Id.* Teaupa also told Buyten that he was in a hotel

room in Waikoloa the day before and saw multiple pounds of methamphetamine being guarded by Hispanic males. *Id.* He explained that "Simon" was scheduled to fly back to California soon, and should have around $100,000 in his possession. *Id.* Drug Enforcement Agency agents later located "Simon Foni" in the Honolulu Airport and seized approximately $32,000 in currency from him. *Id.* Based on this 404(b) Notice, Teaupa filed the Motion to Suppress, arguing that the statements Teaupa gave during this October 20, 2009 arrest are inadmissible because he was in custody at the time and law enforcement officers failed to give Teaupa his *Miranda* warnings. The March 1, 2013 evidentiary hearing focused on that arrest and the circumstances surrounding Teaupa's statements to Buyten.

Four witnesses testified at the hearing:  Federal Bureau of Investigation ("FBI") Special Agent Michael Rotti ("Rotti"); Hawaii County Police Department Officer Erich Jackson ("Jackson"); Buyten; and Teaupa.[3]  The court also admitted four exhibits into evidence.

The testimony of Jackson and Buyten was consistent as to the facts which are critical to determining whether Teaupa's statements resulted from a "custodial interrogation" for purposes of *Miranda*.  In particular, in carefully

---

[3]  The March 1, 2013 hearing also concerned a Motion by Defendant seeking to suppress statements Defendant made during a November 2, 2012 interview, Doc. No. 26, and some of the testimony and evidence admitted concerned only that interview.  The court denied that Motion for reasons stated on the record in open court.  Doc. No. 77.

assessing the testimony of each witness, including their demeanor and manner of

testifying, the court finds Jackson's and Buyton's testimony to be credible and

consistent as to material matters.  On the other hand, Teaupa's testimony as a

whole was contradictory, evasive, and generally not credible.  Accordingly, based

upon its review of the evidence and testimony presented at the hearing, the court

finds the following facts by a preponderance of the evidence.  *See, e.g.*, *Missouri v.*

*Seibert*, 542 U.S. 600, 608 n.1 (2004) (noting that the prosecution has the burden

of proving, by a preponderance of the evidence, admissibility and voluntariness of

statements).

**B.     Teaupa's October 20, 2009 Arrest and Statements to Law Enforcement**

Jackson arrested Teaupa on October 20, 2009 on Pualani Road in

Kona, Hawaii, while Jackson was serving as a patrol officer with the Hawaii

County Police Department.  Teaupa was arrested on an outstanding bench warrant

for criminal contempt of court resulting from a previous driving under the

influence ("DUI") arrest.  Upon his arrest, Teaupa asked Jackson "is Eddie

around?" (referring to Buyten).  Jackson understood Teaupa's statement as a

request to speak with Buyten.  Jackson told Teaupa that Buyten was not with him,

but that he would call him.  Teaupa shook his head yes, acknowledging that

Jackson was going to call Buyten.  While Teaupa was being transported to the

police station in a different vehicle, Jackson called Buyten and informed him that Teaupa had asked about him.  Teaupa and Buyten knew each other previously, although the extent or nature of their prior relationship was not established at the hearing.[4]

After Teaupa arrived at the station, Jackson began to process him (*e.g.*, fingerprinting and photographing him, and cataloging his property).  Teaupa was sitting on a bench next to Jackson's desk, without handcuffs.  Jackson did not administer *Miranda* warnings to Teaupa because he had been arrested on a warrant and Jackson was not planning to question him about the warrant.  As Jackson was processing Teaupa, Buyten came into the booking area.  Buyten testified that after he asked Teaupa words to the effect of "what's up?" or "what's going on?," Teaupa "said he [Teaupa] wanted to speak to me."  At the time, Buyten was a canine handler for a narcotics unit, and was thus dressed in street clothes.[5]  He was carrying a concealed weapon, not visible to Teaupa.

Buyten and Teaupa went across the hall for "a little more privacy" to a separate room normally used for intoxilyzer testing.  The door was left open, and

----

[4]  During a prior motion to suppress involving two unrelated interviews, testimony established that the Teaupa and Buyten families were quite close.

[5]  Among their other duties, Buyten and Jackson are now part of a methamphetamine task force.

6

Teaupa remained un-cuffed and was not restrained.  Buyten again asked Teaupa

"what's going on?"  Buyten was surprised when Teaupa then told Buyten that he

had flown from the mainland the day before with a man named "Simon" and they

had brought drug money from California.  Teaupa told Buyten that Hispanic men

were protecting drugs in the Waikoloa area.  He also told Buyten that Simon was

about to fly back to the mainland with approximately $100,000.  Although Teaupa

and Buyten knew each other, this was the first time they spoke about drugs.  The

meeting lasted about ten minutes, after which Teaupa was returned to the booking

area and was taken to a jail cell.

         During this meeting in the intoxylizer room, Buyten did not advise

Teaupa of his *Miranda* rights.  When the conversation began, Buyten did not know

what Teaupa was going to tell him.  As Teaupa described the drug activity, Buyten

asked Teaupa a few questions such as confirming the name "Simon" or that the

drug money had come to Hawaii County through Maui.  Buyten did not, however,

confront Teaupa with any evidence about drugs or his guilt.  Teaupa admits that

Buyten spoke calmly to him, that Teaupa did "most of the talking," that it "was not

an interview," and that he "was just talking story" with Buyten.  Teaupa also

admitted that he had been smoking methamphetamine on October 20, 2009 and

that his ability to remember events that day might have been affected "a little."

7

Teaupa testified that he told Buyten "everything" so that Buyten would help him with his DUI case.

## III.  <u>DISCUSSION</u>

### A.  *Miranda* Standards

"[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination." *Miranda*, 384 U.S. at 444. *Miranda* requires a person subjected to a custodial interrogation to be "warned that he has a right to remain silent, that any statement he does make may be used as evidence against him, and that he has a right to the presence of an attorney, either retained or appointed." *Id.* Thus, for *Miranda* to apply, "a person must have been both in custody and subjected to interrogation." *United States v. Rommy*, 506 F.3d 108, 132 (2d Cir. 2007); *see also, e.g.*, *United States v. Washington*, 462 F.3d 1124, 1132 (9th Cir. 2006) (analyzing "interrogation" separately from "custody").

### 1.  *Custody*

To determine whether a person was in "custody" for purposes of *Miranda*, the court examines the totality of the circumstances. *See, e.g.*, *Thompson v. Keohane*, 516 U.S. 99, 112 (1995).  In this context, "'custody' is a term of art

8

that specifies circumstances that are thought generally to present a serious danger

of coercion." *Howes v. Fields*, 132 S. Ct. 1181, 1189 (2012).  A court determines

whether a reasonable person in those circumstances would "have felt he or she was

not at liberty to terminate the interrogation and leave." *Id.* (quoting *Thompson*,

516 U.S. at 112).  This determination considers "the objective circumstances" --

the focus is "not on the subjective views harbored by either the interrogating

officers or the person being questioned." *Stansbury v. California*, 511 U.S. 318,

323 (1994).

             "The following factors are among those likely to be relevant to

deciding [whether a reasonable person would believe he or she could terminate the

interrogation and leave]: '(1) the language used to summon the individual; (2) the

extent to which the defendant is confronted with evidence of guilt; (3) the physical

surroundings of the interrogation; (4) the duration of the detention; and (5) the

degree of pressure applied to detain the individual.'" *United States v. Kim*, 292

F.3d 969, 974 (9th Cir. 2002) (quoting *United States v. Hayden*, 260 F.3d 1062,

1066 (9th Cir. 2001)).  These five considerations are not exhaustive. *See United

States v. Bassignani*, 575 F.3d 879, 883-84 (9th Cir. 2009).  For example, *Howes*

recently summarized the relevant factors used to determine whether a suspect was

in custody as including "the location of the questioning, its duration, statements

made during the interview, the presence or absence of physical restraints during the

questioning, and the release of the interviewee at the end of the questioning." 132

S. Ct. at 1189 (internal citations omitted).

Moreover, in the context of an interview in a prison setting, a "'free to

leave' standard ceases to be a useful tool in determining the necessity of *Miranda*

warnings.  It would lead to the conclusion that all prison questioning is custodial

because a reasonable prisoner would always believe he could not leave the prison

freely." *Cervantes v. Walker*, 589 F.2d 424, 428 (1978).  That is, "[d]etermining

whether an individual's freedom of movement was curtailed . . . is simply the first

step in the analysis, not the last." *Howes*, 132 S. Ct. at 1189.  The Supreme Court

has not held that "imprisonment, in and of itself, is enough to constitute *Miranda*

custody." *Id.* at 1188.  Rather, in a prison setting, this factor "implies a change in

the surroundings of the prisoner which results in an added imposition of his

freedom of movement." *Cervantes*, 589 F.2d at 428.  Stated differently,

"'incarceration does not *ipso facto* render an interrogation custodial,' and . . . the

need for a *Miranda* warning to the person in custody for an unrelated matter will

only be triggered by 'some restriction on his freedom of action in connection with

the interrogation itself.'" *Saleh v. Fleming*, 512 F.3d 548, 551 (9th Cir. 2008)

(quoting *Leviston v. Black*, 843 F.2d 302, 304 (8th Cir. 1988)).  To repeat, the

court examines the totality of the circumstances.  *Thompson*, 516 U.S. at 112.

### 2.  *Interrogation*

Under *Miranda*, "interrogation" is "questioning initiated by law enforcement officers."  384 U.S. at 444.  "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected" by *Miranda*.  *Id.* at 478.  As the Supreme Court later explained, "the term 'interrogation' under *Miranda* refers not only to express questioning, but also to any words or actions on the part of the police *(other than those normally attendant to arrest and custody)* that the police should know are reasonably likely to elicit an incriminating response from the suspect."  *Rhode Island v. Innis*, 446 U.S. 291, 301 (1980) (footnote omitted) (emphasis added).  If a defendant "himself initiates further communication, exchanges, or conversations with the police," *Edwards v. Arizona*, 451 U.S. 477, 485 (1981), "nothing in the Fifth and Fourteenth Amendments would prohibit the police from merely listening to his voluntary, volunteered statements and using them against him at the trial."  *Id.*

In this regard, "*Miranda* covers only police conduct likely to be coercive . . . which cannot be said of a question that does nothing more than seek clarification of what the defendant has already volunteered."  *Rommy*, 506 F.3d at 132-33 (quoting Wayne R. LaFave et al., 2 *Criminal Procedure* § 6.7(d), at 567

11

(2d ed. 1999)).  That is, "where a person in custody volunteers incriminating information to the police, simple clarifying questions do not necessarily constitute interrogation." *Id.* at 133.  "But where questions seek to 'expand the scope' of volunteered statements, a more searching inquiry may be necessary to determine whether they have moved beyond neutral clarification to interrogation." *Id.* at 133-34 (citing LaFave et al., 2 *Criminal Procedure* § 6.7(d), at 566-67 (suggesting that defendant's statement given after follow-up questions is appropriately deemed "volunteered only if the questions are neutral efforts to clarify what has already been said rather than apparent attempts to expand the scope of the statement previously made")).  "*Miranda* was designed to guard against . . . the danger of coercion that results from the *interaction* of custody and official interrogation." *Howes*, 132 S. Ct. at 1188 (citations and internal editorial marks omitted).

## B.      Application of Standards

Given these established standards, the court concludes (considering the totality of the circumstances objectively) that Teaupa was neither in "custody" nor "interrogated" on October 20, 2009 when he voluntarily made statements to Buyten.

First, as to the "custody" determination, the court finds based on the credible testimony, that Teaupa voluntarily asked to speak with Buyten after

Buyten entered the booking area.  Teaupa in fact *initiated* that contact by asking

Jackson if Buyten was around, and then affirmatively acknowledging Jackson

when Jackson said he would call Buyten.  Although Teaupa was under arrest and

not free to leave the police station, he was arrested on an entirely different matter

than at issue in his statements -- nothing indicates he was not free to leave the

intoxilyzer room and terminate the conversation with Buyten.[6]  Teaupa was not in

handcuffs, and the door to the intoxilyzer room was open during the conversation

with Buyten.  There was no "restriction on his freedom over and above that in his

normal prisoner setting."  *Cervantes*, 589 F.2d at 428.[7]  There was no "restriction

on his freedom of action in connection with the interrogation itself."  *Saleh*, 512

F.3d at 551.

> Second, Teaupa was not interrogated.  Again, Teaupa gave the

statements voluntarily, without being asked anything by Buyten aside from a

question such as "what's up?"  Buyten had no prior indication that Teaupa would

---

[6]  Teaupa testified that he went outside to smoke a cigarette with Buyten before going to the intoxilyzer room, and that they spoke outside.  Considering the totality of the evidence, the court credits Buyten's testimony that the conversation took place in the intoxilyzer room inside the police station.

[7]  This principle applies even if Teaupa was only arrested on an outstanding bench warrant, and was still being booked at the jail.  That is, even if Teaupa was not a "prisoner," he was "in custody" after his arrest on the bench warrant, but was not "in custody" for purposes of the statements he gave to Buyten.  When applying factors discussed in *Howes*, it is not dispositive (as Teaupa argued at the hearing) that Teaupa was not serving a prison sentence at the time.

reveal details of a drug operation, and this was the first time they had spoken about drugs.  Buyten did not confront Teaupa with evidence of guilt.  The credible evidence shows that any follow-up responses by Buyten to Teaupa's statements were, at most, questions to clarify what Teaupa was saying.  The meeting lasted only about ten minutes.  Although Buyten was armed, the weapon was concealed.  The atmosphere in the intoxylizer room was not coercive, and indeed there is no indication that the meeting was coercive in any respect.  Rather, Teaupa testified that he volunteered statements to Buyten because he trusted him.  He testified that he thought speaking with Buyten might help him with his current arrest related to his DUI/bench warrant.

In sum, Teaupa's October 20, 2009 statements to Buyten were not the result of a "custodial interrogation" for purposes of *Miranda*.  The statements are admissible.

///

///

///

///

///

///

14

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, Defendant Uiki Teaupa's Motion to

Suppress, or in the Alternative, Motion in Limine to Exclude November 2009 [sic]

Interview, Doc. No. 54, is DENIED.

IT IS SO ORDERED.

DATED:  Honolulu, Hawaii, March 7, 2013.



/s/ J. Michael Seabright
J. Michael Seabright
United States District Judge

*United States v. Teaupa*, Cr. No. 12-01128-01 JMS, Order Denying Defendant Uiki Teaupa's Motion to Suppress, or in the Alternative, Motion in Limine to Exclude November 2009 [Sic] Interview